UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID STYLES, | ) | Civil No. 14cv2229 JAH(WVG) |
| Plaintiff, | ) ) | **ORDER VACATING ALJ'S** |
| v. | ) | **DECISION AND REMANDING FOR** |
| CAROLYN W. COLVIN, Acting | ) | **FURTHER PROCEEDINGS** |
| Commissioner of Social Security, | ) ) | |
| Defendant. | ) ) | |

## I. INTRODUCTION

Plaintiff David Styles ("Plaintiff") filed this action pursuant to 42 U.S.C. § 205(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Supplemental Security Income payments under Title XVI of the Social Security Act (the "Act"). Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits or, in the alternative, remanding for further proceedings. (Doc. # 14). The Commissioner has also moved for summary judgment affirming the denial of benefits. (Doc. # 15). For the reasons set forth below, the ALJ's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

## II. BACKGROUND

**A.    Factual Background**

Plaintiff was born on January 6, 1960, and is currently 56 years old.[1] (A.R. 94). Plaintiff alleges that he became disabled on November 1, 2010, at the age of 50. (A.R. 12, 152). According to Plaintiff, he suffers from third degree ac joint separation, spinal nerve damage, and chronic obstructive pulmonary disease ("COPD").[2] (A.R. 266). Plaintiff's past relevant work experience includes serving as a welder, a factory worker, and a handy man. (A.R. 267, 281). The highest level of education attained by Plaintiff is a general education development (GED) diploma. (A.R. 267).

**B.    Procedural Background**

On June 27, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income benefits, alleging disability beginning November 1, 2010. (A.R. 239–55). Plaintiff asserted he was unable to work due to third degree ac joint separation, spinal nerve damage, and COPD. (A.R. 266). His claim was initially denied on October 21, 2011, and denied upon reconsideration on March 8, 2012. (A.R. 167–71, 176–81). On May 11, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 183–84). The hearing was held on March 21, 2013, before ALJ James S. Carletti. (A.R. 34). Plaintiff appeared and was represented by counsel. Id. At the hearing, Plaintiff, a medical expert, and a vocational expert testified. (A.R. 12, 35).

On May 17, 2013, the ALJ issued a written decision finding Plaintiff had not been under a disability from November 1, 2010 through the date of decision. (A.R. 12–28). The Appeals Council denied Plaintiff's request to review the ALJ's decision. (A.R. 1–6). Consequently, the ALJ's decision became the final decision of the Commissioner.

---

[1]"A.R." refers to the Administrative Record filed on January 16, 2015, and located at Doc. No. 12.

[2]Plaintiff also contends in his motion for summary judgment that he suffers from depression and anxiety. (Doc. # 14, pg. 5). Plaintiff did not include complaints of depression and anxiety in his application for social security benefits, but his medical records demonstrate a history of these conditions.

On September 18, 2014, Plaintiff filed a complaint with this Court seeking judicial review of the Commissioner's decision. (Doc. # 1). On January 1, 2015, the Commissioner answered and lodged the administrative record with the Court. (Docs. # 11, 12). On March 18, 2015, Plaintiff moved for summary judgment. (Doc. # 14). On April 14, 2015, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion. (Docs. # 15, 16).[3] The motions were taken under submission without oral argument.

## III. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show that  (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C. §§ 423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled."  Id.

### A.   Sequential Evaluation of Impairments

To decide if an applicant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920.  The burden of proof is on the claimant as to steps one through four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.1999). At step five, the burden shifts to the Commissioner. Id. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Id.; 20 C.F.R. § 404.1520. Step one determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.

---

[3]The Commissioner's cross-motion for summary judgment and response in opposition to Plaintiff's motion for summary judgment are identical and will be singularly addressed. (See Docs. # 15, 16).

14cv2229

If  the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.   20 C.F.R. §§ 404.1520©, 416.920©.  If the impairment is severe, the evaluation proceeds to step three, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Part 404, Appendix 1 to Subpart P.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.   If a condition "falls short of the [listing] criterion," a multiple factor analysis is appropriate. Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003).  In such analysis, "'the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.'" Id. at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)).

If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past.  If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy considering his age, education, and work experience.  The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

**B.    Judicial Review of an ALJ's Decision**

Under 42 U.S.C. § 405(g), an unsuccessful applicant may seek judicial review of the Commissioner's decision to deny benefits.  The scope of judicial review is limited.  The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (internal citations omitted).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "[I]t is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985)). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (citing Allen v. Sec'y of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984)).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (internal citations omitted).

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision.  See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).  Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administrator for further proceedings.  Id.  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).

## IV. DISCUSSION

### A.    The ALJ's Decision

In this case, the ALJ concluded that Plaintiff had not been under a disability as defined in the Act from November 1, 2010 through the date of the ALJ's decision. (A.R. 12). To begin, the ALJ concluded that Plaintiff met the special insured status requirement of the Act through December 31, 2010. (A.R. 14). In step 1, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged disability onset date of November 1, 2010. (A.R. 14). In step two, the ALJ further found that Plaintiff suffered

from the following severe impairments: (i) mild cervical degenerative disc disease, (ii) moderate lumbar degenerative disc disease, (iii) third degree right shoulder separation, (iv) status post left ankle fracture, (v) surgical repair and removal of hardware, and (vi) mild COPD. Id. The ALJ determined that Plaintiff had medically determinable mental impairments of depression and anxiety that did not amount to a severe mental impairment. (A.R. 16). In step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments which met or equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 18). The ALJ concluded that Plaintiff (i) had the residual functional capacity ("RFC") to lift and carry 10 pounds frequently and 20 pounds occasionally, (ii) had no limitation in sitting, standing, or walking, (iii) could occasionally bend, stoop, climb, balance, kneel, crouch, and crawl, (iv) could occasionally reach over head with his right upper extremity, (v) could frequently push and pull with his right upper extremity, (vi) had no left upper extremity limitations, and (vii) should avoid exposure to extreme fumes, cold, and heat. Id. Next, in step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (A.R. 27). Finally, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Id.

Plaintiff moves for summary judgment on the grounds that the ALJ erred in finding that Plaintiff did not suffer from a severe mental impairment, rejecting the opinions of various doctors, and rejecting Plaintiff's testimony. (See Doc. # 14, pg. 5, 10, 18). The Commissioner cross-moves for summary judgment contending that the ALJ properly determined which of Plaintiff's impairments were severe, considered the medical opinion evidence in the record, and discredited Plaintiff's testimony. (See Doc. # 15, pg. 3, 4, 9).

**B.   Severe Mental Impairment**

Plaintiff contends that substantial evidence does not support the ALJ's determination that Plaintiff's mental impairment is not severe and that the ALJ erred by applying more than a *de minimis* standard when determining the severity of Plaintiff's

mental impairment at step two. (Doc. # 14, pg. 5–6). Plaintiff contends that the record is replete with evidence demonstrating that Plaintiff suffers from a mental impairment, and this evidence was enough to meet step two's *de minimis* standard for establishing severity.[4]   Accordingly, Plaintiff contends that the ALJ erred in determining at step two that Plaintiff did not have a severe mental impairment.  The Commissioner contends that the ALJ properly decided the severity of Plaintiff's impairments and properly considered the medical evidence in the record in reaching his decision. (See Doc. # 15-1, pg. 3–4). The Commissioner also asserts that it is immaterial that the ALJ found Plaintiff's mental impairments non-severe at step two because Plaintiff was found to have a severe impairment, so the ALJ continued with the disability analysis, which included consideration of all of Plaintiff's impairments regardless of severity. Id. For the reasons set forth below, the Court finds that the ALJ erred in determining that Plaintiff's mental impairment was non-severe, and this error was not harmless because the ALJ failed to consider Plaintiff's mental impairment at later steps in the disability analysis.

The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. Webb v. Barnhart, 433 F.3d 683, 686–87 (9th Cir. 2005) (citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.1996). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which includes physical functions such as walking, standing, sitting, pushing, carrying; capacities for

---

[4]Plaintiff contends that the following evidence in the record is enough to establish that Plaintiff has a severe mental impairment at step two: (1) The psychiatric consultative examiner's opinion that Plaintiff had a depressed mood, could carry out one or two-step instructions, could not carry out complex instructions, was moderately limited in his ability to maintain concentration, had a Global Assessment Function ("GAF") score of 60, and had other slight limitations regarding his ability to function in the workplace; (2) A state agency medical consultant's opinion that Plaintiff is moderately limited in social functioning and concentration, persistence, or pace, and can perform non-public, simple repetitive tasks; (3) A second state agency medical consultant's affirmation of the first consultant's findings; (4) Treating physician Dr. Britton's opinion that Plaintiff was moderately to markedly  limited in social functioning and moderately limited in daily living activities, concentration, persistence, or pace; and (5) Plaintiff's history of taking psychotropic medications. (Doc. # 14, pg. 6–7.)

7

seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). This inquiry is "a *de minimis* screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153–54 (1987)). An impairment is not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." See Social Security Ruling ("SSR") 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).

Here, there was sufficient, objective evidence demonstrating that Plaintiff's mental impairment has more than a minimal effect on his ability to perform basic work activities. Thus, the ALJ erred in determining at step two that Plaintiff's mental impairment was non-severe. Beginning in 2009 through approximately March, 2012, Plaintiff was treated by Dr. Clifford Britton, M.D. (See A.R. 514, 546). In Plaintiff's medical records, Dr. Britton noted Plaintiff's history of anxiety. (See, e.g., A.R. 510, 514, 539, 542). In March, 2012, Dr. Britton completed a physical capacities evaluation and a depressive disorder evaluation of Plaintiff. (A.R. 542–49). On the physical capacities evaluation, Dr. Britton diagnosed Plaintiff with anxiety, amongst other diagnoses. (A.R. 542). Dr. Britton indicated that Plaintiff's symptoms from his various diagnoses are severe enough to often interfere with the attention and concentration required to perform simple work-related tasks. Id. On the depressive disorder evaluation, Dr. Britton indicated that Plaintiff has a mood disturbance accompanied by full or partial depressive syndrome, which causes Plaintiff to have difficulty concentrating or thinking, moderate limitations in activities of daily living, moderate to marked difficulties in maintaining social functioning, and moderate deficiencies in concentration, persistence, or pace. (A.R. 546, 548). In approximately January, 2013, Plaintiff started seeing Dr. Loretta Stenzel, M.D., of the Vista Community Clinic as his treating physician. Dr. Stenzel's treatment notes indicate

that Plaintiff's chronic health problems include depression. (See, e.g., A.R. 579, 581, 584). Dr. Stenzel also treated Plaintiff's depression with prescription medication, including Seroquel.[5] (A.R. 588, 591).

Plaintiff's medical records also contains a psychiatric review technique form ("PRTF") and a mental residual functional capacity form ("MRFC") completed by a state agency medical consultant on Plaintiff's behalf in July, 2011. (A.R. 84–91). The state agency medical consultant opined that Plaintiff suffers from a severe affective disorder and determined that Plaintiff satisfies the "paragraph A" diagnostic criteria of the PRTF for Listing 12.04 (Affective Disorders). (A.R. 84); see 20 C.F.R., Part 4, Subpart P, App. 1, 12.04. In assessing Plaintiff's functional restrictions under the "paragraph B" criteria, the state agency medical consultant indicated that Plaintiff suffers from moderate difficulties in maintaining concentration, persistence, or pace and in the ability to maintain social functioning. (A.R. 84); see 20 C.F.R., Part 4, Subpart P, App. 1. In the MRFC, the state agency medical consultant found that Plaintiff has moderate limitations in the ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) sustain an ordinary routine without special supervision, (6) work in coordination with or in proximity to others without being distracted by them, (7) complete normal workdays and workweeks without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (8) interact appropriately with the general public, (9) get along with co-workers or peers without distracting them or exhibiting behavioral extremes, (10) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and (11) respond appropriately to changes in the work setting. (A.R. 89–91). A second state agency

---

[5] Seroquel is used to treat depression, schizophrenia, and bipolar disorder. U.S. National Library of Medicine and National Institutes of Health, Medline Plus, available at https://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019.html (last accessed March 28, 2016).

medical consultant affirmed these findings. (A.R. 145–49).

In addition, the record contains medical records and findings of a psychiatric consultative examiner who administered complete psychological evaluations of Plaintiff in August, 2008 and December, 2010. (AR at 437–46, 447–56). In both evaluations, the psychiatric consultative examiner diagnosed Plaintiff with major depressive disorder, ADHD, marijuana abuse/dependence, and alcohol dependence in remission. (A.R. at 443, 453). Based on Plaintiff's test results and clinical data, the psychiatric consultative examiner concluded in both evaluations that Plaintiff is unable to carry out detailed and complex instructions and is moderately limited in his ability to maintain concentration, attention, persistence, and pace. (A.R. 444–45, 455).

Nonetheless, the ALJ determined that Plaintiff's mental impairments were not severe for three reasons. First, although Plaintiff has a history of taking medication for anxiety and depression, the consultative examiner and his primary care physician did not note that Plaintiff presented as "severely depressed or anxious." Second, Plaintiff failed to follow through after Dr. Stenzel referred him to further psychiatric treatment. Third, the ALJ noted that Plaintiff may have been drug-seeking as opposed to experiencing severe psychiatric symptoms because Plaintiff reported receiving Xanax from an undisclosed physician, has a history of addiction that he failed to disclose to a treating physician, and indicated a preference for benzodiazepines[6] to a treating physician. (A.R. 16–17).

Given the minimal threshold required to show that an impairment is severe, the ALJ's step two determination that Plaintiff's mental impairments are not severe was not supported by substantial evidence. First, as discussed below, the ALJ did not sufficiently articulate clear and convincing reasons for rejecting the uncontroverted opinions of the Plaintiff's treating physician, the psychiatric consultative examiner, and the state agency medical consultants that Plaintiff has a severe mental impairment. Second, the ALJ improperly relied on Plaintiff's failure to seek further psychiatric treatment as evidence

---

[6]Benzodiazepines are a highly addictive, psychoactive drug commonly used to treat anxiety, insomnia, and alcohol withdrawal. Brand names for benzodiazepines include Rivotril, Klonopin, Xanax, and Valium.

that Plaintiff was not experiencing severe mental impairments. (A.R. 16). As the Ninth Circuit has noted, "depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Thus, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Id. (internal citations omitted).

Finally, the other facts cited by the ALJ, even when viewed collectively, do not constitute substantial evidence. The fact that Plaintiff's treating physician did not note that Plaintiff was "severely depressed or anxious" is not a sufficient reason to find that Plaintiff's mental impairment is non-severe at step two of the sequential evaluation. Instead, it would appear that a prescription from a treating physician for psychotropic medication might indicate the existence of a severe impairment. Nor does the ALJ's observation that Plaintiff might be "drug-seeking" provide a substantial basis for finding the impairment non-severe at this stage of the inquiry. Rather, Plaintiff's medical records document a history of anxiety and depression, and prescription medications used to treat mental health disorders. These records also contain the opinions of various doctors that Plaintiff's mental impairment has more than a minimal effect on his ability to do basic work activities. Overall, the evidence in Plaintiff's medical records indicates a level of impairment that at least meets the *de minimis* requirement at this stage of the inquiry. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.1996). While Plaintiff may not succeed in proving that he is disabled, Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005), the ALJ "appears to have applied a more stringent legal standard than is warranted by law." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

As noted by the Commissioner, because the ALJ resolved step two in Plaintiff's favor and continued the sequential evaluation, any error in finding Plaintiff's mental impairment not severe at step two is only harmful error if the ALJ failed to properly consider the limitations stemming therefrom at later steps of the analysis. See Burch v. Barnhart, 400 F.3d 676, 682–84 (9th Cir. 2005). This is so because the ALJ is required

to consider limitations imposed by all impairments, even those deemed not severe, at the later steps of the sequential evaluation process. SSR 96-8p, 1996 WL 362207, at *34477 (July 2, 1996). However, it does not appear from the ALJ's decision that he took Plaintiff's mental impairment into account after step two.[7] As such, the ALJ's error in finding Plaintiff's mental impairment  non-severe at step two is not harmless and warrants remand.

## C.  Medical Opinion Evidence

Next, Plaintiff contends that the ALJ erred by failing to provide specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physician, the psychiatric consultative examiner, and the state agency medical consultants. (Doc. # 14, pg. 14). Plaintiff asserts that the ALJ also erred by  crediting the orthopedic consultative examiner's 2010 assessment of Plaintiff rather than the 2011 assessment by the same examiner. Id. at 16–17.  The Commissioner asserts that the ALJ properly considered the medical opinion evidence in the record and that substantial evidence supports the ALJ's decision. (Doc. # 15-1, pg. 4).

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not

---

[7]For example, in the ALJ's hypothetical question to the vocational expert, the ALJ failed to set out Plaintiff's mental impairment limitations. (A.R. 68–69). The ALJ asked the vocational expert, "Assume we have a 50 year old individual with the equivalency of a high school education. Your testimony is the prior work activity was unskilled to semi-skilled, no transferability of skills at the medium, heavy and very heavy level. If we use the assessment of the medical expert which is no limitations in sitting, standing or walking. Lifting and carrying 10 pounds occasionally, 20 pounds – 10 pounds frequently, 20 pounds occasionally. Limited to – in all the non-exertional areas to occasionally crawling, stooping, bending, etcetera. Occasionally overhead work with the right upper extremity. Frequent pushing and pulling with the right upper extremity. No limitations to the left upper extremity. And avoid exposure to extreme fumes, cold and heat. With those limitations I assume his prior work activity would not be available?" (A.R. 69). After the vocational expert responds that Plaintiff's prior work experience would not be available, the ALJ finished his hypothetical question asking, "Would there be other work activity that exists, either nationally or locally, that could be performed?" Id. The ALJ erred by failing to include Plaintiff's mental impairments in his hypothetical question to the vocational expert. "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations [including non-severe impairments] is defective." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (internal citations omitted).

treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight is given to the opinion of a treating source than to that of a non-treating physician. <u>Id.</u> Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician. <u>Id.</u> (citing <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir.1990)).

If the treating physician's opinion is not contradicted by another doctor, the ALJ must provide clear and convincing reasons for rejecting that opinion. <u>Lester</u>, 81 F.3d at 830. If the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence. <u>Id.</u> However, the ALJ may reject an examining doctor's opinion when there is a lack of objective medical findings, treatment notes, or rationale to support his opinion. <u>See Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). Similarly, the uncontradicted opinion of an examining doctor may only be rejected for clear and convincing reasons. <u>Lester</u>, 81 F.3d at 830.  The ALJ may only reject the examining doctor's opinion, if contradicted by another doctor, for specific and legitimate reasons that are supported by substantial evidence in the record. <u>Id.</u> at 830–31. The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician. <u>Id.</u> at 831.

### 1.   Medical Opinion Evidence Regarding Plaintiff's Mental Impairments

Plaintiff contends that the ALJ erred by failing to set forth specific and legitimate reasons for rejecting the opinions of four doctors who opined that Plaintiff has various mental impairment limitations. (Doc. # 14, pg. 14 –16). Commissioner contends that the ALJ properly considered the medical evidence in the record. (Doc. # 15-1, pg. 8). The Court finds that the ALJ erred in rejecting the uncontroverted opinions of Plaintiff's treating physician, the psychiatric consultative examiner, and the state agency medical consultants without providing clear and convincing reasons for doing so.

An ALJ is responsible for resolving conflicts in the medical evidence.  <u>Andrews v.</u>

<u>Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.1995). However, the ALJ cannot disregard the uncontroverted opinions of treating or examining physicians without specific and legitimate reasons supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830–31.  State agency medical and psychological consultants are treated as expert, non-examining sources in disability proceedings. The ALJ may not ignore these opinions and must explain the weight given to them. SSR 96-6p.

Here, the ALJ considered the opinions of Plaintiff's treating physicians, the psychiatric consultative examiner, and the state agency medical consultants. (A.R. 16 – 17). The ALJ considered treating physician Dr. Britton's opinion that Plaintiff has marked limitations in maintaining social functioning[8] and moderate limitations in activities of daily living and the ability to maintain concentration, persistence, and pace. (A.R. 17). The ALJ noted that the psychiatric consultative examiner opined that Plaintiff is limited to one or two step instructions; cannot carry out detailed or complex instructions; has moderate impairments in maintaining concentration, persistence, and pace; and has slight impairments in relating to others, adapting to stressors, and performing activities without special supervision. <u>Id.</u> The ALJ also considered the opinions of state agency reviewing doctors that Plaintiff is limited to non-public, simple repetitive tasks. <u>Id.</u> In determining that Plaintiff does not suffer from a severe mental impairment, the ALJ assigned little weight to these opinions.

The Court finds that the opinions of treating physician Dr. Britton, the psychiatric consultative examiner, and the state agency medical consultants are consistent. The treating physician, psychiatric consultative examiner, and state agency medical consultants all opined that Plaintiff has at least moderate limitations in maintaining concentration, persistence, and pace, as well as additional limitations in social functioning and carrying out difficult instructions. (A.R. 84, 145–49, 444–45, 455, 548).  Because the opinions are

---

[8]The ALJ states that Dr. Britton found Plaintiff to be markedly limited in the ability to maintain social functioning. (A.R. 17). However, in the referenced depressive disorder evaluation, Dr. Britton checked two boxes indicating "moderate" and "marked" difficulties in social functioning. (A.R. 548).

uncontroverted, the ALJ was required to provide clear and convincing reasons for rejecting these opinions, but failed to do so.

The ALJ assigned little weight to these opinions for three reasons. First, the ALJ found the opinions generally inconsistent with Plaintiff's treatment record. The Court finds that this reason is not clear and convincing. Although Plaintiff's treatment records demonstrate that he primarily sought treatment to alleviate pain from physical maladies, Plaintiff's medical records include multiple diagnoses of depression, multiple opinions that Plaintiff's mental impairment interfered with his ability to function, and evidence of medical prescriptions used to treat Plaintiff's depression. It is not clear that Plaintiff's medical records are inconsistent with the various doctors' opinions rejected by the ALJ. Second, the ALJ assigned little weight to these opinions after finding them inconsistent with the lack of objective psychiatric findings at Plaintiff's psychiatric consultative evaluations. Again, the Court finds this reason is not clear and convincing. The psychiatric consultative examiner diagnosed Plaintiff with major depressive disorder and noted that Plaintiff could not carry out complex instructions and had moderate limitations in concentration, attention, persistence, and pace. Finally, the ALJ assigned little weight to the opinions because they were inconsistent with Plaintiff's failure to follow up with further psychiatric treatment after receiving a referral from his treating doctor. (A.R. 17). The Court finds this reason is not clear and convincing. A person's failure to seek treatment for depression is not a legitimate basis to conclude that a physician's assessment of the claimant's condition is inaccurate. Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, multiple physicians opined that Plaintiff suffered from mental impairments. Plaintiff's failure to seek further treatment cannot be used as a reason to reject the doctors' opinions regarding Plaintiff's mental impairments.  In sum, the Court finds that the ALJ erred in failing to provide clear and convincing reasons for rejecting the uncontroverted opinions of Plaintiff's treating physician, the psychiatric consultative examiner, and the state agency medical consultants.

///

15

14cv2229

### 2.   Medical Opinion Evidence Regarding Plaintiff's Residual Functional Capacity

Plaintiff additionally contends that the ALJ erred in determining his RFC. Specifically, Plaintiff asserts that the ALJ erred by assigning weight to the orthopedic consultative examiner's 2010 assessment of Plaintiff rather than the more recent 2011 assessment by the same examining doctor. (Doc. # 14, pg. 16–18). The Commissioner asserts that the ALJ properly assigned less weight to the 2011 assessment because the 2010 and 2011 examination results were very similar, and it is the ALJ's responsibility to resolve ambiguities in the medical record. (Doc. # 15-1, pg. 7). The Court finds that the ALJ failed to provide specific or legitimate reasons for disregarding the orthopedic consultative examiner's 2011 evaluation and thus erred in determining Plaintiff's RFC.

A claimant's RFC is the most he can still do despite his limitations. Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir.1996) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, the ALJ must consider all relevant evidence of record, including medical opinions. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir.2006); see also 20 C.F.R. § 404.1527(b). Significantly, unless an ALJ expressly rejects a particular medical opinion, he must consider its findings when crafting the claimant's RFC. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Earlier medical evaluations "do not constitute substantial evidence to rebut the conclusions" in later reports where the claimant suffers from a progressively deteriorating condition.  Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985).

In determining Plaintiff's RFC, the ALJ considered the opinions of Plaintiff's treating physician,[9] the orthopedic consultative examiner, the state agency medical

/ / /

/ / /

/ / /

---

[9] In particular, the ALJ noted that one of Plaintiff's treating physicians, Dr. Britton, opined in a March 6, 2012 physical capacities evaluation that Plaintiff could "lift 5 pounds frequently and 20 pounds occasionally; could carry 5 pounds frequently and 10 pounds occasionally; [Plaintiff] could stand and walk up to 3 hours out of an 8-hour day and he could sit up to 4 hours out of an 8-hour day." (A.R. 25).

consultants,[10] and an impartial medical expert.[11] The ALJ discussed the orthopedic consultative examiner's 2010 and 2011 evaluations of Plaintiff, and stated that he was giving more weight to the 2010 assessment, in which the examiner concluded that Plaintiff has a greater RFC.[12] The ALJ gave two reasons for giving less weight to the 2011 evaluation. First, the ALJ noted that the objective findings at the two examinations differed only slightly. Second, the ALJ found that the 2011 evaluation's statement that Plaintiff had "occasional manipulative limitations" was unclear and subject to more than one interpretation. (A.R. 26).  Relying on <u>Stone v. Heckler</u>, Plaintiff argues that the ALJ erred in giving less weight to the 2011 evaluation. The Court agrees.

In <u>Stone</u>, the court held that, where the claimant had a progressively deteriorating condition, the most recent medical report was "the most probative." <u>See</u> <u>Stone</u>, 761 F.2d at 532. Here, Plaintiff suffers from the progressively deteriorating condition of degenerative disc disease. The orthopedic consultative examiner  and the ALJ noted that Plaintiff has degenerative disc disease, and the impartial medical expert opined that Plaintiff has severe degeneration in his lumbar spine. (<u>See</u> A.R. 26, 64, 463, 529, 531).

---

[10]The ALJ considered that the state agency medical consultants' opinion that Plaintiff could "lift and carry 20 pounds frequently and 25 pounds occasionally; he could stand and walk up to 6 hours out of an 8-hour day and he could sit up to 6 hours out of an 8-hour day; he could occasionally climb, stoop, kneel and crouch; he should avoid concentrated exposure to extreme cold, vibration, and hazards." (A.R. 25).

[11]The ALJ cited the impartial medical expert's opinion that Plaintiff could "lift and carry 10 pounds frequently and 20 pounds occasionally; he had no standing, walking, or sitting restrictions; he could occasionally climb, stoop, kneel and crouch; he should do no crawling; he can occasionally perform overhead work with the right upper extremity; he could frequently reach in other directions with the right upper extremity; he could frequently push and pull with the right upper extremity; he should avoid concentrated exposure to extreme cold, heat or fumes." (A.R. 26).

[12]In the 2010 evaluation, the orthopedic consultative examiner opined that Plaintiff could "lift and carry 10 pounds frequently and 20 pounds occasionally; he could stand and walk up to 6 hours out of an 8-hour day and he could sit up to 6 hours out of an 8-hour day; he could occasionally push or pull with the right upper extremity; he could occasionally climb, stoop, kneel and crouch." (A.R. 25). In the 2011 report, the same orthopedic consultative examiner assigned Plaintiff a lower RFC and opined that he could "lift and carry less than 10 pounds frequently and 10 pounds occasionally; he could stand and walk up to 2 hours out of an 8-hour day and he could sit up to 6 hours out of an 8-hour day; he could frequently push or pull with the right upper extremity; he could occasionally climb, stoop, kneel and crouch; he had 'occasional manipulative limitations.'" (A.R. 26).

14cv2229

Although the ALJ opined that the objective findings of the 2010 and 2011 assessments "differed little," thereby implying that Plaintiff's condition was not worsening, the Court finds that the 2011 assessment contains evidence of deterioration.[13] Because Plaintiff suffers from a progressively deteriorating condition, the orthopedic consultative examiner's 2010 assessment was not substantial evidence to reject his 2011 evaluation.

The Court also finds that the ALJ's second reason for rejecting the 2011 assessment does not constitute substantial evidence. The orthopedic consultative examiner's evaluations contain medical assessments of Plaintiff in a variety of areas. One potentially vague statement about limitations in Plaintiff's hands present in the 2011 evaluation is not substantial evidence to reject the entirety of that evaluation. When disregarding the opinion of the examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995). Because the ALJ failed to provide specific or legitimate reasons for disregarding the orthopedic consultative examiner's 2011 evaluation, the Court finds that the ALJ erred in determining Plaintiff's RFC.

## D. Rejection of Plaintiff's Testimony

Finally, Plaintiff contends that the ALJ erred in discrediting his pain and limitations testimony. (Doc. # 14, pg. 5). The Commissioner counters that the ALJ provided valid reasons in determining that Plaintiff's testimony was not credible. (Doc. # 15-1, pg. 9–12). The Court finds that the ALJ properly set forth some clear and convincing reasons supported by substantial evidence to reject Plaintiff's subjective complaint testimony.

The credibility of a claimant's testimony regarding subjective pain is analyzed in two steps. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or

---

[13]For example, regarding Plaintiff's back range of motion, in the 2010 assessment, the orthopedic consultative examiner reported that Plaintiff's forward bending range of motion was 60 degrees, his backward bending range was 30 degrees, and his side bending range was 20 degrees. (A.R. 462). In the 2011 assessment, Plaintiff's back range of motion has decreased such that his forward bending range of motion was 50 degrees, his backward bending range was 20 degrees, and his side bending range was 15 degrees. (A.R. 528).

impairments that could reasonably be expected to produce the pain or other symptoms alleged. Id. Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if he provides "specific, clear and convincing reasons" for doing so. Id. "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010) (internal citations omitted). "It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Moreover, the ALJ may not discredit a claimant's testimony of pain solely because the degree of pain alleged is not supported by objective medical evidence. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). "In weighing a claimant's credibility, the ALJ may consider. . . inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, Plaintiff testified that he has severe pain in his back and neck for which he daily takes morphine,[14] gabapentin,[15] naproxen,[16] flexeril,[17] and norcos.[18] (A.R. 38–40).

---

[14]Morphine is used to treat moderate to severe pain. U.S. National Library of Medicine and National Institutes of Health, Medline Plus, *available at* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682133.html (last accessed March 28, 2016).

[15] Gabapentin is an anticonvulsant drug. U.S. National Library of Medicine and National Institutes of Health, Medline Plus, *available at* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last accessed March 28, 2016).

[16]Naproxen is used to treat pain, especially various forms of arthritis and bursitis, which is pain arising from inflammation of the shoulder joint. U.S. National Library of Medicine and National Institutes of Health, Medline Plus, *available at*

1   Plaintiff further testified that these medications do not eliminate his pain, and the pain

2   interferes with his ability to concentrate. (A.R. 44–45). Plaintiff stated that he can stand

3   for twenty minutes, walk one block, and frequently uses a cane. (A.R. 40–41). Plaintiff

4   also testified that he is able to drive, cook, and water plants for five minutes. Id. The ALJ

5   found Plaintiff's "medically determinable impairment could reasonably be expected to

6   cause the alleged symptoms." (A.R. 23). However, the ALJ concluded that Plaintiff's

7   testimony "concerning the intensity, persistence and limiting effects of [his] symptoms"

8   was "not entirely credible." Id.  Because the ALJ found Plaintiff met the first step of the

9   test, the issue is whether the ALJ provided "specific clear, and convincing reasons" for the

10  adverse credibility finding. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).

11      The Court finds that the ALJ's decision properly set forth clear and convincing

12  reasons supported by substantial evidence in the record for rejecting Plaintiff's testimony.

13  The ALJ did not discredit Plaintiff's testimony "solely because the degree of pain alleged

14  by claimant is not supported by objective evidence," as Plaintiff contends. (Doc. # 14, pg.

15  20 (citing Bunnell v. Sullivan, 947 F.2d 341, 347(9th Cir. 1991)). Rather, in accordance

16  with Light, the ALJ pointed to inconsistencies in Plaintiff's testimony, medical records,

17  and the testimony of his mother to reject Plaintiff's subjective complaint testimony

18  regarding his physical limitations. With regard to Plaintiff's alleged severe asthma and

19  COPD, the ALJ noted that at numerous doctors appointments over the years Plaintiff

20  never reported or complained of breathing problems, Plaintiff had never been hospitalized

21

22  ─────────────

23  https://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last accessed March 28, 2016).

24      [17] Flexeril is a muscle relaxant used to relieve pain from muscle injuries. U.S. National Library of Medicine and National Institutes of Health, Medline Plus, *available*

25  *at* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html (last accessed March 28, 2016).

26

27      [18]Norcos are used to treat moderate to severe pain. U.S. National Library of Medicine and National Institutes of Health, Medline Plus, *available at*
    https://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html (last accessed March

28  28, 2016).

for such conditions, and there was no evidence that Plaintiff's symptoms could not be controlled by his medication. (A.R. 23). The ALJ noted inconsistencies in Plaintiff's medical examinations showing possible magnification. (A.R. 23–24). With respect to Plaintiff's testimony about his impairments, the ALJ found that Plaintiff's testimony was contradicted by his mother's description of Plaintiff's daily activities.[19] (A.R. 24). The ALJ further noted that Plaintiff had made inconsistent statements regarding why he stopped working.  Id.  Although Plaintiff testified at the hearing that he stopped working in November, 2010 due to intense pain, Plaintiff previously attested in his application for benefits that he stopped working after losing his job in 2006 because he was arrested. (A.R. 38, 266). The ALJ noted that Plaintiff's medical records present contradictory information and indicate that Plaintiff was, in fact, working in some capacity beyond the date of disability as Plaintiff was seen by a physician in December, 2011, and complained of neck pain caused by a recent job. (A.R. 23–24, 540). Moreover, the ALJ noted that Plaintiff has a history of drug and alcohol abuse, but denied having a history of addiction to a treating physician. (A.R. 16–17, 441, 598). Finally, Plaintiff's treating physician noted that she felt uncomfortable increasing the dosage of Plaintiff's medications after Plaintiff expressed his affinity for benzodiazepines. (A.R. 16–17, 585).  Although not all of the ALJ's reasons for discrediting Plaintiff's testimony are convincing,[20] the Court finds that the ALJ properly set forth some clear and convincing reasons supported by substantial

---

[19]Plaintiff's mother, with whom Plaintiff lives, stated in a "Third Party Function Report" that Plaintiff is able to make coffee and simple meals, do his laundry, do light vacuuming, fill the dishwasher, use a leaf blower, drive, do personal errands, and feed the cat. (A.R. 305–09).

[20]One proffered reason for discrediting Plaintiff's testimony was the ALJ's determination that Plaintiff's testimony regarding the severity of limitations on his daily activities could not be "objectively verified." (A.R. 24). The Court rejects this as a legitimate basis for discrediting Plaintiff's testimony. See Doyle v. Colvin, No. CV 13-5981-PJW, 2015 WL 505896, *3 (C.D. Cal. 2015) (stating that the inability to objectively verify Plaintiff's testimony is not a valid reason for an ALJ to determine an claimant's testimony is not credible); accord Haller v. Astrue, No. CIV S-07-1204, 2008 WL 4291448, *5 (E.D. Cal. 2008); Hardy v Astrue, No. CIV S-08-1327, 2009 WL 2880707, *9 (E.D. Cal. 2009).

14cv2229

evidence to reject Plaintiff's subjective complaint testimony. Therefore, Plaintiff is not entitled to relief on this ground.

## V. CONCLUSION

The decision whether to reverse and remand for further proceedings or reverse and simply award benefits is within the Court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179; Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003).

Here, the evidence shows an impairment that can be considered severe at step two within the meaning of the Social Security Regulations, but which might not prevent Plaintiff from performing either his past work or some work in the national economy. However, that is not a determination that this Court can make. Thus, the case must be remanded for further evaluation in accordance with the five-step sequential process. Additionally, the ALJ shall further evaluate the medical evidence and make appropriate findings in accordance with this opinion.

## VI. ORDER

Accordingly, IT IS HEREBY ORDERED that the ALJ's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

Dated: March 31, 2016

JOHN A. HOUSTON
United States District Judge

14cv2229